UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONALD J. HIPSKY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 3:00CV1637 (CFD) |
| | : | |
| ALLSTATE INSURANCE CO., | : | |
|     Defendant. | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Donald Hipsky, filed this action in the Connecticut Superior Court against the defendant, Allstate Insurance Company ("Allstate") and it was subsequently removed to this Court.[1]  The First Amended Complaint asserts the following four counts, all related to Allstate's efforts to settle Hipsky's claim arising from an automobile accident with an Allstate insured: (1) breach of an implied covenant of good faith and fair dealing, (2) violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA"), (3) recklessness, and (4) fraudulent misrepresentation.

Pending is the defendant's Motion for Summary Judgment on all counts of the First Amended Complaint.  For the following reasons the motion is GRANTED.

---

[1]This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship as to all parties and the amount in controversy exceeds $75,000.  The parties agree that Connecticut substantive law applies.

## I.  Factual Background[2]

On June 27, 1998, Hipsky was injured in an automobile accident also involving an Allstate insured.  After learning that Hipsky was making a claim for damages against its insured, Allstate sent Hipsky a form "Quality Service Pledge," ("QSP") which stated that "[b]ecause you have been in an accident with an Allstate policyholder, we will provide you with quality service."  The QSP also stated that Allstate would: 1) explain the claims process and keep him informed throughout that process; 2) investigate the accident fairly and quickly; and 3) "make an appropriate offer of compensation for any injuries" (if he "qualified").

Hipsky was also contacted by Deborah Schwager, a claims representative for Allstate.  While the parties disagree as to the frequency of Schwager's telephone calls to Hipsky, it is undisputed that the principal purpose of her calls was to resolve Hipsky's claim against the Allstate insured.  On May 11, 1999, Allstate offered Hipsky $3,500 to settle his claim; on May 28 Hipsky made a counter-offer of $23,000.  On June 7, 1999, Allstate made a "final offer" of $4,000, which Hipsky rejected and he then retained counsel.  Hipsky subsequently filed a lawsuit against the Allstate insured, which was settled by Allstate on September 14, 2001 for $25,000.

Hipsky also filed this action directly against Allstate, based on Allstate's handling of the claims process before he retained counsel.  Hipsky claims that, among other things, Schwager discouraged him from seeking counsel, telling him that an attorney would merely reduce the net amount of his settlement.  He asserts that Allstate's settlement practices violated an implied covenant of good faith and fair dealing, violated CUIPA and CUTPA, and constituted

---

[2]The facts are taken from the parties' motion papers and Local Rule 9(c) statements.  After the parties filed their Local Rule 9(c) statements, the Local Rules were renumbered.  Previous Rule 9(c) is now Local Rule 56(a).  Disputed facts are indicated.

recklessness and fraudulent misrepresentation. Allstate has moved for summary judgment on all counts of the First Amended Complaint.

## II. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56©)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 253. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991); see also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

### III. Discussion

A. Implied Covenant of Good Faith and Fair Dealing (Count One)

Allstate claims it is entitled to summary judgment on this count for two reasons. First, it asserts that this implied covenant arises only in a contractual relationship. Therefore, Allstate claims, because Hipsky was not a party to its policy, it did not owe Hipsky a duty of good faith and fair dealing. However, if the Court finds that Allstate did owe Hipsky an obligation of good faith and fair dealing, Allstate also argues that based on the undisputed facts, it has not breached that obligation. Hipsky claims that the QSP constitutes a contract, but argues in the alternative that "Connecticut does recognize a tort giving rise to a cause of action for breach of duty of good faith and fair dealing, not dependant upon a contractual relationship between the parties." Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J [Doc. # 58] at 17.

Connecticut only recognizes an obligation of good faith and fair dealing resulting from a contractual relationship. "'[T]he existence of a contract between the parties *is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing*.'" Macomber Travelers Prop. & Cas. Corp., 261 Conn. 620, 638 (2002) (quoting Hoskins v. Titan Value Equities Group, Inc., 252 Conn. 789, 793 (2000) (emphasis added).[3] See also Chieffo v.

---

[3]Hipsky cites Buckman v. People Express, Inc., 205 Conn. 166 (1987) for the proposition that Connecticut recognizes a cause of action for breach of good faith and fair dealing that is not dependant on a contractual relationship, but rather on "an insurer's common law duty of good faith." Id. at 170. However, Buckman did not address a situation where there was no contractual privity between the litigants. On the contrary, the plaintiff in Buckman was suing his employer for failing to allow him to continue his medical insurance coverage. See id. at 168. When the Court made the statement cited by Hipsky–"[T]his Court recognizes an independent cause of action in tort arising from an insurer's common law duty of good faith," Id. at 170–it was addressing the defendant's argument that the plaintiff's remedies were limited by Conn. Gen. Stat. § 38-262d (Conversion and Extension Rights on Group Coverage). See id. There is no indication that the Court was extending an obligation of good faith and fair dealing to parties

Yannielli, No. CV159940, 2001 WL 950286, at *2 (Conn. Super. July 10, 2001) ("No Connecticut court has extended the implied covenant of fair dealing and good faith to parties who have not entered into a contractual relationship ... Furthermore, [a]n insurance company does not have a duty to settle fairly with third-party claimants") (citations omitted). Moreover, in Macomber, the Connecticut Supreme Court declined to recognize a fiduciary duty between an insurer and a third party claimant, reasoning that "such a duty would interfere with the insurer's ability to act primarily for the benefit of *its* insured." Macomber, 261 Conn. at 642 (emphasis in original). Based on the reasoning of Macomber, an implied covenant of good faith and fair dealing in the third party settlement context could interfere with the insurer's duty to its own insured.[4] Thus, because he was not a party to the Allstate policy, Hipsky can only survive summary judgment on count one of the First Amended Complaint if there was some other contract between him and Allstate.

Hipsky argues that "[t]here is no doubt that he considered the Quality Service Pledge as a binding contract." Pl.'s Mem. in Opp. to Summ. J. [Doc. # 58]. However, based on the undisputed facts, the Court concludes that the QSP did not constitute a contract between Hipsky and Allstate.

First, there was not an offer and acceptance sufficient to create a valid contract:

---

other than those that are in contractual privity. However, even if the Court were to agree with Hipsky's reading of Buckman, it would be contradicted by the Connecticut Supreme Court's more recent holding in Macomber.

[4]See also Thompson v. Aetna Life & Cas. Co., 2 C.S.C.R. 648, 650 (Conn. Super. 1987) ("That fundamental relationship [between insurer and insured] would be distorted if the insurer also had a duty to third party claimants to settle claims."); Section III.B, infra.

> "To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties." Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co., 159 Conn. 242, 249, 268 A.2d 391 (1970). If the minds of the parties have not truly met, no enforceable contract exists. See Fortier v. Newington Group, Inc., supra, at 510, 620 A.2d 1321. "[A]n agreement must be definite and certain as to its terms and requirements." (Internal quotation marks omitted.) Id. "So long as any essential matters are left open for further consideration, the contract is not complete." 17A Am.Jur.2d, Contracts § 32 (1991).

L & R Realty v. Connecticut National Bank, 53 Conn.App. 524, 534-35, cert. denied, 250 Conn. 901 (1999). The language of the QSP was too vague and uncertain as to the obligations of Allstate to constitute an offer which, if accepted, could be enforced. For example, the QSP makes clear that all of the elements of any potential settlement remained unresolved, contemplated further investigation by Allstate, and even left open the question of whether Allstate's insured was at fault. Thus, as the QSP left "essential matters . . . open for further consideration" it could not be a basis for a "meeting of the minds" sufficient to constitute a valid contract[5].

In addition, in order to enforce a contract claim against Allstate, Hipsky would have to demonstrate that he provided consideration to support a contract:

> To be enforceable, a contract must be supported by valuable consideration. Gruber v. Friedman, 102 Conn. 34, 36-37, 127 A. 907 (1925). "The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable." State National Bank v. Dick, 164 Conn. 523, 529, 325 A.2d 235 (1973)

Connecticut Nat'l Bank v. Voog, 233 Conn. 352, 366 (1995). Here, based on the undisputed facts, Hipsky did not furnish any consideration to support a contract between the

---

[5] Hipsky also concedes that he was in an "adversarial relationship" with Allstate during the claim process. ¶ 25, Def.'s. Local Rule 56 Statement.

parties; Hipsky neither gave nor promised anything in exchange for the QSP.[6]

In the absence of consideration, "detrimental reliance may substitute for missing consideration." Lestrange v. Kontout, 1996 WL 166464, at *1 (citing D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987)); Nichols v. Clark, 1997 WL 12420, *6 (Jan. 2, 1997 Conn. Super.)("[w]hen detrimental reliance is demonstrated by the promisee's action or forbearance, the detrimental reliance satisfies the necessity of consideration required for a valid contract."). However, Hipsky also has not

---

[6] Section 71 of the Restatement (Second) of Contracts relates the familiar legal sense of the term "consideration": "(1) To **625 constitute consideration, a performance or a return promise *must be bargained for*. (2) A performance or return promise is bargained for *if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise*." 1 Restatement (Second), Contracts § 71, p. 172 (1981); see also Calamita v. Tradesmens National Bank, 135 Conn. 326, 332, 64 A.2d 46 (1949) (" '[c]onsideration must actually be bargained for as the exchange for the promise'"); accord State v. Sostre, 261 Conn. 111, 123, 802 A.2d 754 (2002) (" '[t]o constitute consideration, *669 a performance or a return promise must be bargained for'"). The Restatement (Second) of Contracts further defines the term " '[b]argained for'" as follows: "In the typical bargain, the consideration and the promise bear a reciprocal relation of motive or inducement: *the consideration induces the making of the promise and the promise induces the furnishing of the consideration*. Here, as in the matter of mutual assent, the law is concerned with the external manifestation rather than the undisclosed mental state.... *[I]t is not enough that the promise induces the conduct of the promisee* or that the conduct of the promisee induces the making of the promise; both elements must be present, or there is no bargain." (Citation omitted.).

Mandell v. Gavin, 262 Conn. 659, 668-69 (2003) (emphasis added). Here, Hipsky claims that Allstate received a benefit in that Hipsky did not retain an attorney as quickly as he would have in the absence of Allstate's representations. However, there is no indication that Allstate offered Hipsky anything in exchange for his forbearance. The QSP does not indicate that its promises are conditioned upon the third-party claimant not retaining counsel. In other words, it may be the case that Allstate's promise "induced the conduct of [Hipsky]," but because there is no question that that conduct did not "induce the making of [Allstate's] promise[s]," Hipsky's delay cannot constitute consideration.

demonstrated a genuine issue of material fact that he relied to his detriment on Allstate's promises.[7]

Accordingly, as there was not a valid a contract between the parties, Allstate's motion for summary judgment is GRANTED as to Count One of the First Amended Complaint, Hipsky's claim for breach of the implied covenant of good faith and fair dealing.

B.  CUTPA and CUIPA (Count Two)

The second count of the First Amended Complaint alleges that Allstate's handling of Hipsky's claim, including the issuance of the QSP, violated CUIPA[8], and CUTPA.[9]  While there is no private right of action under CUIPA, a claimant may assert a CUTPA claim on the basis of conduct that violates CUIPA.  See Mead v. Burns, 199 Conn. 651, 663 (1986) (affirming the "existence of a private cause of action under CUTPA to enforce alleged CUIPA violations"); Oak River Co. v. Ferreri, No. 3:01CV2047(CLG), 2002 WL 31094978, at *3-4 (Aug. 29, 2002 D. Conn.) ("[M]ost federal and Connecticut state courts have decided that CUIPA does not provide

---

[7]Hipsky claims that he did incur a detriment in relying on Allstate's representations.  For example, he stated in his interrogatory answers that the delay resulted in the loss of evidence about the condition of the Allstate injured's automobile at the time of the accident.  Although detrimental reliance may support a claim by third parties to insurance contracts, see Robert E. Keeton and Alan I. Widiss, Insurance Law § 6.5(a) (1988), Hipsky ultimately received a settlement far in excess of Allstate's initial offers and his own initial counteroffer, and presents no evidence that the loss of this evidence impacted his ultimate settlement.  See, also Section III.D., infra, concerning additional claims of loss of settlement value through delay in retaining a lawyer.

[8] Conn. Gen. Stat. § 38a-815, et seq.  Specifically, the First Amended Complaint alleges that Allstate's conduct violated Connecticut General Statutes §§ 38a-816(6) (unfair claim settlement practices) and 38a-816(2) (False information and advertising generally).

[9]Conn. Gen. Stat. § 42-110a, et seq.  Specifically, the First Amended Complaint alleges that Allstate violated CUTPA by violating 38a-816(2) and (6) and Connecticut State Regulation § 42-110b-18(g), which prohibits certain forms of false advertising.

for a private cause of action. . . . [however], [t]he Connecticut Supreme Court has held that a party may obtain relief for a violation of CUIPA by bringing a CUTPA action alleging the CUIPA violation.") (unpublished opinion).  Therefore, the Court will consider both of Hipsky's CUIPA claims as CUTPA claims.

    1.  Unfair Settlement Practices

Connecticut General Statute § 38a-816(6) identifies a number of "unfair settlement claims practices."  Hipsky contends that Allstate engaged in a number of these practices in its attempt to settle his claim by, inter alia, failing to offer him fair value, suggesting that it would benefit him to not retain an attorney, and failing to attempt to reach a fair and equitable settlement in good faith.[10]

The parties disagree as to whether § 38a-816(6)'s prohibitions apply to settlements with third party claimants or only to settlements with insureds.  A federal court, sitting in diversity, is "bound to follow state law on any matter of substantive law."  Rounds v. Rush Trucking Co., 211 F.3d 185, 188 (2d Cir. 200) (citing DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir.1994)).  The Connecticut Supreme Court has not resolved the question of whether § 38a-816(6) applies to

---

[10]The proscribed settlement practices listed in 38a-816(6) are preceded by the following language: "Unfair claim settlement practices.  Committing or performing with such frequency as to indicate a general business practice any of the following:"  The Connecticut Supreme Court has held that the phrase "general business practice" signifies the legislature's intent that "claims of unfair settlement practices under CUIPA require a showing of more than a single act of insurance misconduct." Mead v. Burns, 199 Conn. 651, 659 (1986).  Here, there is no specific allegation that the conduct complained of by Hispksy–the distribution of the QSP and the telephone calls made by Schwager–occurred with "such frequency" as to "indicate a general business practice."  However, it seems clear that the QSP was part of nationwide program that Allstate had instituted to settle claims and thus that the settlement practices complained of here may be a "general business practice" of Allstate.  Nevertheless, the Court need not address this issue since it finds that summary judgment is warranted as to this Count on other grounds.  See discussion, infra.

settlement negotiations with third parties that are not in a contractual relationship with the insurance company. In the absence of such guidance, it is this Court's obligation to decide this question as the Connecticut Supreme Court would likely decide it. "Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law." Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 399 (2d Cir.2001) (quoting Michalski v. Home Depot, Inc., 225 F.3d 113, 116 (2d Cir.2000)) (internal quotation marks omitted). In doing so, it is appropriate for the Court to consider the decisions of other Connecticut courts. "Where the highest court of a state has not resolved an issue, the Second Circuit has held that a federal court 'must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State.'" Kline v. E.I. DuPont de Nemours & Co., Inc., 15 F. Supp. 2d 299, 302 (W.D.N.Y. 1998) (citing Travelers Ins. Co. v. 633 Third Assoc., 14 F.3d 114, 119 (2d Cir.1994)).

A majority of the Connecticut Superior Courts to have considered this issue has held that § 38a-816(6) does not apply to third party claimants. In Thompson v. Aetna Life & Cas. Co., 2 C.S.C.R. 648 (Conn. Super. 1987), for example, the Superior Court considered "whether or not a plaintiff, as a third-party claimant, has a valid cause of action against the defendant, as insurer of the plaintiff's tort-feasor, for unfair settlement practices" based on 38-61(6).[11] Id. at 649. The Thompson Court noted that "Legislative history of § 38-61(6) is completely silent on the act creating rights against insurance companies in favor of third party claimants." Id. (citing Conn. General Assembly H.B. 7810. House proceedings 1979 Session, ¶. 3335-3339; Senate

---

[11]Conn. Gen. Stat. § 38-61, et seq. was transferred to Conn. Gen. Stat. § 38a-816, et seq. in 1991. However, no changes were made to the wording of 38-61(6) ("Unfair settlement practices"), which is now codified at § 38a-816(6).

Proceedings, 1979 Sess. ¶. 2587-2588).  Noting that § 38-61(6) was based on "a model insurance practices act . . . adopted by 45 states," the Thompson Court proceeded to examine how other states had addressed its application to third party claimants.  The Court found persuasive the reasoning of the cases from the majority of jurisdictions that had concluded that the Model Act did not permit third party claimants to bring claims for alleged unfair settlement practices:

> The Court concurs with the Scroogins [v. Allstate Ins. Co., 74 Ill. App. 3d 1027, 393 N.E. 2d 718 (1979)] line of authority.  Insurance is a complex and highly regulated industry.  As a result "the realm of insurance law is an exceptionally inappropriate area for judicial creativity."  Comment, *Liability and Third Party Claimants: The Limits of Duty* [48 Univ. of Chic. L. R. (1981)].  The creation of new insurance rights and remedies is best left to the legislature. . . .
>
> CUIPA does not clearly create rights in the third-party claimant against the insurer. . . [Section] 38-61(6) can properly be read to impose on the company claim settlement obligations in favor of the insured, or a claimant or beneficiary claiming under the policy.  This interpretation is consistent with the nature of insurance policies to create contractual rights and duties between the insured and insurer.  That fundamental relationship would be distorted if the insurer also had a duty to third party claimants to settle claims.  It is predictable that whenever the insurer declines to settle, the injured third party claimant will threaten the carrier with an independent lawsuit.

Id. at 649-50.[12]  This Court finds the reasoning and analysis of Thompson persuasive, and agrees with the majority of the Connecticut Superior Courts that have considered the issue.  See, e.g.,

---

[12] The Thompson Court cited Royal Globe Ins. Co. v. Superior Court of Butte County, 23 Cal. 3d 880, 592 P.2d 329 (1979) as representing the minority position that the Model Act does create rights for third-party claimants against insurers for unfair settlement practices.  However, two years after the Thompson Court's ruling, the California Supreme Court overruled Royal Globe in Moradi-Shalal v. Fireman's Fund Ins. Companies, 46 Cal.3d 287, 758 P.2d 58 (1988) and adopted the majority view that the act does not create a right for third-party claimants for unfair settlement practices.  See Moradi-Shalal, 758 P.2d at 68 ("The points raised by the dissent in Royal Globe, as reflected in the cases from other states, the adverse scholarly comment, and the available legislative history, seem irrefutable. . . . [The] Royal Globe holding reportedly has resulted in multiple litigation or coerced settlements, and has generated confusion and uncertainty . . . [We] have concluded that [Royal Globe] should be overruled").

Chieffo v. Yannielli, No. CV159940, 2001 WL 950286, at *2 (Conn. Super. July 10, 2001) ("An insurance company does not have a duty to settle fairly with third-party claimants.") (citations and internal quotation marks omitted); D'Alessandro v. Clare, No. CV 970084006S, 1999 WL 203809, at *2 (Apr. 1 1999 Conn. Super.) ("CUIPA defines '[u]nfair claim settlement practices' in a way that refers to insureds, not third parties.") (citing Conn. Gen. Stat. § 38a-816(6)).[13] Accordingly, Hipsky has no private right of action under CUIPA/CUTPA pursuant to 38a-816(6) for alleged unfair settlement practices by Allstate, and Allstate's motion for summary judgment is GRANTED as to this claim.

    2. False information and advertising

Hipsky also claims that Allstate's representations violated Connecticut General Statute § 38a-816(2) and Connecticut General Regulation § 42-110b-18(g) which prohibit false advertising. However, at least one Connecticut court has held that § 38a-816(2) is limited in its scope when applied to insurance claims, as it was designed to protect consumers from practices used to induce them to purchase insurance contracts. See Webster Bank v. Travelers Cas. & Sur. Co., No. CV 906476078S, 1999 WL 329639, at *7 (Conn. Super. Apr. 30, 1999) ("38a-816(2) was intended to prevent insurers from making deceptive, untrue and misleading claims in their advertising to consumers; the plain language of subsection (2) demonstrates that it was not intended to apply to the situation where an insurer allegedly fails to settle a claim in good faith . .

---

[13]Moreover, while the Connecticut Supreme Court has not considered this issue directly, the Superior Court opinions cited in the text are consistent with the Connecticut Supreme Court's recent decision in Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. 620 (2002), in which the Court held that there is no fiduciary duty between an insurer and a third-party claimant because "such a duty would interfere with the insurer's ability to act primarily for the benefit of *its* insured." 261 Conn. at 636.

."). Here, there is no dispute that the materials and representations at issue were not intended to induce Hipsky to enter into a contract for insurance with Allstate. Rather, they were intended to facilitate the settlement of a claim, and therefore do not fall within § 38a-816(2).[14]

Hipsky's First Amended Complaint also fails to plead that there was a *public* representation. "Section 38a-816(2) . . . requires an untrue, deceptive, or misleading assertion, representation or statement with respect to the insurance business must be 'before the public' to be actionable." Scalise v. Stephens, No. X01CV020179296S, 2003 WL 22481480, at *4 (Oct. 21, 2003 Conn. Super.). See also Conn. Gen. Stat. § 38a-816(2). Hipsky has not alleged that any of the representations he allegedly relied upon were published, disseminated or circulated before the public. Certainly, the phone calls from Schwager, during which she allegedly attempted to

---

[14]Black's Law Dictionary (7th ed. 1999) defines "advertising" as "[t]he action of drawing the public's attention to something to promote its sale." This definition is consistent with the holding in Webster Bank. Here, as in Webster Bank, the alleged misrepresentations were not designed to "promote the sale" of Allstate's goods or services, but rather to facilitate the resolution of a claim. Although 38a-816(2) mentions false "information" as well as "advertising," there are no Connecticut decisions which have expanded the scope of its protections beyond Webster Bank to other than prospective purchasers. Moreover, "[i]nsurance is a complex and highly regulated industry. As a result, 'the realm of insurance law is an exceptionally inappropriate area for judicial creativity'. . . The creation of new insurance rights and remedies is best left to the legislature." Thompson, 2 C.S.C.R. at 649 (citation omitted). Thus, in the absence of authority to the contrary, and in light of Webster Bank, the Court declines to read Conn. Gen. Stat. § 38a-816(2) so broadly as to cover representations made in the course of settlement negotiations.

Connecticut Regulation § 42-110b-18, entitled, "Misleading advertising," provides, in relevant part, that "[i]t shall be an unfair or deceptive act or practice to . . . (g) Disparage the merchandise, services, or business of another by false or misleading advertising." While no Connecticut court appears to have addressed the reach of Conn. Gen. Reg. § 42-110b-18(g), that regulation, on its face, concerns conduct involving the advertising of products and services, not the settlement of claims. Thus, the reasoning of Webster Bank regarding the scope of § 38a-816(2) would appear to apply to § 42-110b-18(g) with equal force, as it is undisputed that any alleged representations by Allstate were not an attempt to induce Hipsky into entering into a contract for insurance with Allstate.

persuade Hipsky not to hire an attorney, were private communications discretely targeted at Hipsky and his wife and therefore cannot form the basis of a false advertising claim under § 38a-816(2) because they are not claims that were "before the public."[15]  Although the plaintiff has not alleged it, the Court can infer that the QSP was disseminated on a broader basis–perhaps even nationwide.  However, there is no basis on which the Court can infer that it was published "before the public," rather than to the limited population of individuals who have been in accidents with Allstate insureds.

Therefore, Allstate's motion for summary judgment is GRANTED as to Hipsky's claims under Conn. Gen. Stat. § 38a-816(2) and Conn. Gen. Reg. § 42-110b-18(g).

C. Recklessness (Count Three)

The third count of the First Amended Complaint alleges that by failing to settle the plaintiff's claim in a "timely manner" Allstate has "engaged in a general course of reckless business conduct" resulting in Hipsky suffering "extreme emotional distress, anguish, bodily harm, and frustration."  However, "to be legally sufficient, a claim based on wanton or reckless conduct must allege some duty running from the defendant to the plaintiff." Absher v. Flexi Int'l Software, Inc., No. Civ. 3:02CV171(AHN), 2003 WL 2002778, at *7 (Apr. 10, 2003 D. Conn.) (citing Sheiman v. Lafayette Bank & Trust Co., 4 Conn. App. 39, 46 (1985)).  Hipsky argues that the QSP created a duty to him and that "[a]dditionally, Plaintiff has alleged statutory duties owed by Defendant Allstate to Plaintiff."  However, as noted above, the QSP did not constitute a binding contract between the parties and neither the Connecticut courts nor its legislature have found or established a duty for an insurance company to settle fairly with third party claimants

---

[15] See also fn.14, supra.

enforceable by private actions.  See Chieffo, 2001 WL 950286, at *2.  Therefore, Allstate's motion for summary judgment is GRANTED as to count three of the First Amended Complaint.

D.  Fraudulent Misrepresentation

The final count of the First Amended Complaint asserts a claim of fraudulent misrepresentation.  The elements of a fraudulent misrepresentation claim are well established under Connecticut law.  "[The Connecticut] Supreme Court has repeatedly stated that '[t]he essential elements of an action in common law fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury.'"  Parker v. Shaker Real Estate, Inc., 47 Conn. App. 489, 493 (1998) (quoting Barbara Weisman, Trustee v. Kaspar, 233 Conn. 531, 539 (1995)).

Even viewing the evidence in a light most favorable to Hipsky, there is no genuine issue of material fact regarding the fourth element, that he relied on the false misrepresentations to his detriment.  Even if Allstate encouraged Hipsky not to retain an attorney, he did retain counsel to represent him and ultimately obtained a settlement that far exceeded Allstate's original offers and even exceeded his own counteroffer to Allstate.  Hipsky argues that he was nevertheless injured by Allstate's representations because he "suffered economic loss in that his case preparation and investigation was delayed while Allstate delayed his claim."  First Amended Complaint [Doc. # 15], ¶ 30.  In his Amended Memorandum of Law in Opposition to Summary Judgment [Doc. # 63], Hipsky claims that the opinion of his insurance expert, Michael Buckmir,[16] creates a genuine

---

[16]In his deposition and in his expert report, Buckmir states that by encouraging Hipsky not to retain counsel, Allstate violated Conn. Gen. Stat. § 38a-832(a), which provides that:

issue of material fact that "Hipsky's claim should have been settled in May, 2000 for between $20,641.00 and $30,641.00."[17] He also relies on the opinion of economist Dr. Steven Shapiro for the proposition that "Hipsky suffered damages representing lost investment opportunity on the $25,000.00 settlement for the period from late May, 2000, when the underlying case should have settled, to the date of the receipt of the settlement check, September 14, 2001, in the amount of

---

> No insurer licensed to transact business in this state may, on behalf of itself or its insured, send or knowingly permit to be sent any written communication or make any oral statement to any person known or believed to have a claim for bodily injury or wrongful death against one of its insureds that affirmatively advises against the need for or discourages the retention of an attorney to represent the interest of such person in prosecuting or settling such bodily injury or wrongful death claim.

However, this statute, on its face, does not appear to provide for a private right of action for violation of its provisions, but rather leaves its enforcement to the Insurance Commissioner. Section 38a-832(b) provides, in relevant part, that "[i]f any insurer or any employee of an insurer makes a written or oral communication in violation of subsection (a) of this section, *the Insurance Commissioner* . . . may impose sanctions . . ." (emphasis added). Nor does the legislative history of this section suggest that the legislature intended to create a private right of enforcement. See H-764, Conn. Gen. Assembly, House Proceedings 1997, Vol. 40, part 6, at 1997 (Apr. 30, 1997) ("This [§ 38a-832(b)] allows complaints to be made directly to the Insurance Commissioner, and allows the Insurance Commissioner to impose sanctions already allowed under Title 38a . . .") (Rep. Lawlor). Moreover, the prohibitions of § 38a-832 are not included among the unfair practices defined in § 38a-816, and is therefore not subject to the holding of Mead v. Burns, 199 Conn. 651, 663 (1986), that CUTPA provides a private right of action for violations of CUIPA. But see Rivera v. Pereira, No. CV010382813S, 2002 WL 377517, * 3 (Conn. Super. Jan. 25, 2002) (holding that CUTPA provides private cause of action for violation of § 83a-832) (unpublished opinion). At any rate, the Court need not decide whether Hipsky would have a private right of action against Allstate for violation of § 38a-832 because Hipsky has not identified that section of the Connecticut General Statutes in his complaint.

[17]Buckmir claims that Allstate's "final offer" of $4,000 made in June of 1999, was premature because Hipsky was still receiving medical treatment at that time, and that it would take "9 to 12 months" to determine whether there was any permanent partial disability and for Hipsky to reach maximum medical improvement. See Pl.'s Amended Mem. of Law in Opp. to Def.'s Mot. for Summ. J. [Doc. # 63], Ex. G. Buckmir claims that Allstate should not have made a final settlement offer until Hipsky had reached maximum medical improvement. See id.

$1,180." However, even crediting Buckmir's figures regarding the range of an appropriate settlement, there is no genuine issue of material fact that the settlement Hipsky ultimately received was within that range,[18] even when taking into account the lost rate of return stated by Dr. Shapiro.[19]

Hipsky's First Amended Complaint also asserts non-economic damages of "extreme emotional distress, anguish, bodily harm, and frustration" allegedly arising from Allstate's misrepresentations. However, Hipsky did not address these non-economic damages in his opposition to Allstate's summary judgment and has pointed to nothing in the record from which a jury could infer that he suffered "extreme emotional distress" or "bodily harm" based on a delay in retaining an attorney to represent him against Allstate. "Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." Amnesty America. v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002). Hipsky cannot create a genuine issue of fact merely by asserting that he suffered emotional distress and frustration. See Barton v. City of Bristol, __ F. Supp.2d __, 2003 WL 22869265, at *12 (D. Conn. 2003) ("Plaintiff cannot create a genuine issue of material fact by making a simple conclusory statement"); Costanzo v. U.S. Postal Service, 2003 WL 1701998, 2003.at *1, fn.2. (Mar. 31, 2003 S.D.N.Y.) ("[C]onclusory allegations cannot create a genuine issue of material fact for trial").

---

[18]Indeed, in a supplement to his opinion, Buckmir explicitly indicates that the $25,000 settlement "falls within the fair, just, and reasonable settlement value ranges as outlined" in his original opinion. See Pl.'s Amended Mem. of Law in Opp. to Def.'s Mot. for Summ. J. [Doc. # 63], Ex. G.

[19]See also fn. 7, supra, regarding the damages claim concerning lost evidence.

Therefore, as there is no genuine issue of material fact that Hipsky did not act upon Allstate's alleged misrepresentations to his injury, Allstate's motion for summary judgment is GRANTED as to Count Four of the First Amended Complaint, alleging fraudulent misrepresentation.

### IV.  Conclusion

For the preceding reasons, the defendant's Motion for Summary Judgment [Doc. # 38] is GRANTED and the clerk is ordered to close the case.

SO ORDERED this __20th__ day of January 2004, at Hartford, Connecticut.

        /s/ CFD
        **CHRISTOPHER F. DRONEY**
        **UNITED STATES DISTRICT JUDGE**